UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| Alex Velez, | |
| *Plaintiff*, | Civil No. 3:10cv483 (JBA) |
| *v.* | |
| Jeff McDonald, et al., | March 27, 2011 |
| *Defendant*. | |

RULING ON MOTION TO DISMISS

Plaintiff Alex Velez filed this action *pro se* against Connecticut Department of Corrections personnel Lieutenant Jeff McDonald and Officers Michael McGoughan, Joseph Busalacchi, Scott Langenheim, James Durkin, Kevin O'Meara, and Ryan Rogozinski under 42 U.S.C. § 1983 for use of excessive force in violation of his Fourth, Eighth, and Fourteenth Amendment rights; assault and battery; and intentional infliction of emotional distress ("IIED"). Defendants have moved [Doc. # 10] to dismiss Plaintiff's claims against Defendants in their official capacity pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Plaintiff's excessive force, supervisory liability, and intentional infliction of emotional distress claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed below, Defendants' motion will be granted in part and denied in part.

I.   Factual Allegations

During the period relevant to his Complaint, Velez was incarcerated at Garner Correctional Institution ("Garner") in Newtown, Connecticut. (Compl. [Doc. # 1] ¶ 2.) Velez alleges that on May 10, 2008 Defendants McCoughan and Busalacchi escorted him back to his cell at the Inpatient Medical Unit at Garner after a shower. (*Id.*) According, to

Velez, McCoughan pushed him into his cell, grabbed Velez's handcuffs through the cell's trapdoor, closed the cell door, and proceeded to pull Velez's hands, wrists, and arms through the trapdoor. (*Id.* ¶ 3.) Velez slipped on the wet floor of his cell, which had been recently washed, as McCoughan and Busalacchi continued to pull his arms through the trapdoor and "ben[t] the handcuffs into [Velez's] wrists inflicting bodily harm to [him]." (*Id.* ¶¶ 4–5.) Velez alleges that McCoughan then released one of Velez's hands from the cuffs, and while Velez's face was "at the trap door" sprayed him in the face with mace two times at point blank range. (*Id.* ¶ 6.) McCoughan and Busalacchi continued to pull Velez's arm through the trapdoor, removed the other handcuff from Velez, and McCoughan "pushed his body alarm." (*Id.* ¶¶ 7–8.)

Defendants Durkin and McDonald came to Velez's cell window to find Velez "yelling and screaming [']my eyes, my eyes, please get me out of here['] and they [left]." (*Id.* ¶ 9.) Velez was "in intense pain" and stuck his hands "out of the trapdoor and start[ed] lifting it up and down banging it to try to get the Officers and Lieutenant to get [him] out of the cell." (*Id.* ¶ 10.) He claims that McDonald returned to the cell door, closed the trapdoor, and refused to remove Velez from the cell to decontaminate him, forcing Velez "to inhale all the chemical munitions fumes from the mace for at least another 10–15 minutes." (*Id.* ¶¶ 11–12.) After leaving Velez in his cell for this time period, McDonald instructed Velez to "get handcuffed" and Velez complied. (*Id.* ¶ 13.) Durkin and O'Meara escorted the handcuffed Velez to the shower, but after removing him from his cell they "used excessive force and malicious[] and wanton force to slam [Velez] into the wall while [he] was being cooperative at all times." (*Id.* ¶ 14.) Velez alleges that despite protocol requiring immediate decontamination and his "cries about the burning sensation to [his] eyes, ears, mouth, and

nose," Durkin and O'Meara brought him to the day–room table instead of the shower. (*Id.* ¶ 15.) Rodozinski and McDonald accompanied Velez and the other officers, and according to Velez, McDonald, "who was the supervisor in charge and who at all times knew what was being done to [Velez]" refused to intervene. (*Id.* ¶ 16.) Velez also alleges that during this time, O'Meara and Durkin "were tightening the handcuffs on my wrists inflicting pain on me." (*Id.* ¶ 17.)

While at the day–room table, Velez continued to "cry and complain" to McDonald that his face was burning and that he was having chest pains, but McDonald "chose to do nothing." (*Id.* ¶ 18.) After the Officers "finally escorted" Velez to the shower for decontamination, Defendant Langenheim "open handed slapped" Velez in the face and Durkin, Langenheim, and O'Meara "slammed" him onto the shower floor. (*Id.* ¶¶ 19–22.) During this time, Velez was "crying and yelling at Defendant Langenheim and asking why he hit me, I did nothing wrong." (*Id.* ¶ 23.) The Officers then escorted Velez back to the day room table for medical help and again "threw" him on the floor "for no reason at all." (*Id.* ¶ 24.) Velez alleges with respect to both instances of being thrown to the floor that Lieutenant McDonald told the Officers "to place [Velez] on the ground." (*Id.* ¶ 25.)

Velez alleges that due to the incidents described above he suffered "minor nerve damage" to his wrists, a "busted blood vessel" in his right eye, "bruising and cuts" under his right eye, an "abrasion" on his forehead, "head and neck pains," and aggravation to a previous injury to his back. (*Id.* ¶ 26–30.) Velez also claims that during this altercation he "was compliant at all times." (*Id.* ¶ 30.)

3

II. Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Kuck v. Danaher*, 600 F.3d 159, 162–63 (2d Cir. 2010). A complaint will not survive if it relies on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or if "the well–pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1949–50.

III. Discussion

A. Monetary Damages Against Defendants in Their Official Capacity

Defendants argue that to the extent that Velez names them in their official capacity, any award of monetary damages is barred by the Eleventh Amendment. (Mem. Supp. [Doc. # 10–1] at 7–8.) In listing the Defendants in his Complaint, Velez writes "Official & Individual Capacity" after the name of each Defendant, however he describes each of his Claims for Relief as against Defendants "in their individual capacity." Velez clarifies in his Objection [Doc. # 13] to the Defendants' Motion to Dismiss that he seeks money damages against the Defendants "[i]n their [i]ndividual [c]apacities [o]nly." (Objection at 3.)

Defendants are correct that the Eleventh Amendment to the U.S. Constitution bars monetary damages actions against state officials sued in their official capacity in federal court. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Velez is therefore barred from seeking money damages against Defendants in their official capacity; however, he concedes that he seeks money damages against Defendants only in their individual capacity.

4

Defendants' Motion to Dismiss is therefore granted to the extent that the Complaint could be read to seek money damages against Defendants in their official capacities.

B.   Excessive Force

Defendants move to dismiss Velez's excessive force claim against McGoughan, Busalacchi, Durkin, and O'Meara for failure to state a claim because Velez does not allege that these Defendants acted with malicious or sadistic intent to cause harm. (Mem. Supp. at 8–9.) A prison official's use of force violates the Eight Amendment to the U.S. Constitution when the force used meets both an objective requirement that in the relevant context it violated "contemporary standards of decency" and a subjective requirement that the official involved had a "wanton" state of mind when engaging in the alleged conduct. *Hudson v. McMillian*, 503 U.S. 1, 5–8 (1992); *Griffen v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). "Whether conduct was 'wanton' turns on 'whether force was applied in a good–faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) (quoting *Hudson*, 503 U.S. at 7). Factors relevant to whether the force used was necessary under the circumstances "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur" include the extent of the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Plaintiff's factual allegations imply sufficient wantonness so as to meet his burden to state a claim for relief under the Eight Amendment that is plausible on its face.

5

Defendants argue that Velez fails to allege that they acted maliciously and sadistically to cause harm,[1] however the Complaint contains extensive factual allegations of Defendants' use of force that, when compared to relevant indicia of wantonness, plausibly allege that Defendants acted out of malicious intent to cause Velez harm. Velez claims that although he was compliant with the Defendant Officers' directives at all times, McGoughan and Busalacchi twice sprayed his face with mace at point blank range while pulling one of his arms through the trapdoor of his cell (Compl. ¶ 6); that despite his cries of pain Defendants thereafter left him in his cell without any decontamination measures for 10–15 minutes (*id.* ¶ 9–12); that Durkin and O'Meara slammed him against the wall outside his cell after handcuffing him (*id.* ¶ 13–14); that again despite his cries of pain and prison regulations requiring immediate decontamination, Defendants instead brought him to the day room at Garner (*id.* ¶ 15–18); that after finally bringing him to a shower, Langenheim slapped him in the face and Durkin, Langenheim, and O'Meara slammed him on the shower floor (*id.* ¶ 19–23); and that after returning him to the day room after decontamination, Defendants threw him on the floor once again (*id.* ¶ 24–25).

Under the applicable factors in *Hudson*, 503 U.S. at 7, because Velez claims that he complied with directives and was restrained at all times during these incidents, it can readily be inferred from his allegations that the amount of force used by Defendants far exceeded the need for that force, particularly in the absence of any defined threat or any attempt to temper the severity of Defendants' treatment of Velez. Velez has accordingly "allege[d] facts

---

[1] Contrary to Defendants argument in this respect, Velez does, in Paragraph 14 of his Complaint, allege that in slamming him against the wall outside his cell, Defendants used "malicious[] and wanton force." He does not, however, characterize their intent as malicious, sadistic, or wanton elsewhere in the Complaint.

6

from which it could be inferred that prison officials subject him to excessive force, and did so maliciously and sadistically." *Sims*, 230 F.3d at 22 (prisoner's complaint sufficiently pleaded excessive force where he alleged three separate incidents where while he was handcuffed, defendants, without provocation, punched and/or kicked him in the chest, abdomen, head, and groin); *compare Branham v. Meachum*, 77 F.3d 626, 631 (2d Cir. 1996) (prisoner's complaint alleging that prison officials "'put [him] on lockdown,' placed him on 'full restraint' status, denied him outdoor recreation, and forced him to wear leg irons while showering" did not state a claim based on excessive force).

Velez's detailed factual allegations therefore state an excessive force claim that is plausible on its face and Defendants' motion to dismiss this claim is denied.

C. Supervisory Liability Against Lieutenant McDonald

Defendants move to dismiss Velez's supervisory liability claim against Lieutenant McDonald arguing that it must fail as a matter of law because Velez fails to state a claim for excessive force. (Mem. Supp. at 10.) A supervisor is deemed personally involved in constitutional deprivations, and thus liable under Section 1983, where he or she "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Velez alleges in his second claim for relief that McDonald "was deliberately indifferent in supervising his subordinates who used excessive force." (Compl. ¶ 40.) Because, as discussed above, Velez has presented a plausible excessive force claim, Defendants' motion to dismiss the supervisory liability claim is denied.

D. Intentional Infliction of Emotional Distress

Defendants move to dismiss Velez's fifth claim for relief, for IIED against all Defendants, on the ground that the conduct alleged by Velez is not extreme or outrageous. (Mem. Supp. at 10–12.) In order to succeed on a claim for intentional infliction of emotional distress, a plaintiff must establish: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Id.* Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 211 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Velez's Complaint sets out factual allegations that, if proven, could constitute conduct "beyond on possible bounds of decency." Being maced in the face at close range while restrained and compliant, slapped and slammed against the wall and floor, and forced to sustain prolonged pain in the eyes, ears, nose, and mouth because of delayed decontamination, where a plaintiff posed no risk to the corrections officers, may be found to constitute extreme and outrageous conduct. *See Sabir v. Jowett*, 214 F. Supp. 2d 226, 242 (D. Conn. 2002) (denying defendant state trooper Fusaro's motion for judgment as a matter of law on plaintiff's IIED claim "where the jury could have found that Trooper Fusaro

permitted the hospital security officer to pepper spray Sabir while he was in handcuffs, that he transported Sabir outside on a cold winter night wearing only socks and underwear, and that he left him in a cold cell in that condition for several hours"); *Keeney v. City of New London*, 196 F. Supp. 2d 190, 202 (D. Conn. 2002) (denying summary judgment for defendants who claimed that twice capstunning the restrained and motionless plaintiff was not extreme and outrageous); *see also Frappier v. City of Waterbury*, 3:07–CV–1457(WWE), 2008 WL 4980362, *3 (D. Conn. Nov. 20, 2008) ("Courts have held that the use of excessive force can establish a claim for intentional infliction of emotional distress."). Velez has accordingly stated an IIED claim that is plausible on its face.

IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss [Doc. # 10] is GRANTED as to official capacity damages claims and DENIED in all other respects.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of March, 2011.